UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MINNESOTA LIFE INSURANCE COMPANY**,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>**HENRY JOHN COOKE,**<br><br>Defendant,<br><br>and<br><br>**and DEBRA SCHILL,**<br><br>Defendants/Counter-Claimant. | Civ. No. 2:20-cv-14326 (WJM)<br><br>**OPINION** |

### **WILLIAM J. MARTINI, U.S.D.J.:**

In this interpleader action, Plaintiff Minnesota Life Insurance Company states that it is unable to determine whether Defendants[1] Henry Cooke or Debra Schill is the rightful primary beneficiary under the life insurance policy it issued. Defendant Debra Schill filed counterclaims against Minnesota Life and crossclaims against Defendant Henry John Cooke. Before the Court is Plaintiff's motion to dismiss Defendant Schill's counterclaims, ECF No. 35. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Minnesota Life's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### **I. BACKGROUND**[2]

On November 22, 2003, Minnesota Life Insurance Company ("Minnesota Life") issued life insurance policy number 2298410N (the "Policy") to the Decedent Michael

---

[1] The Court will refer to Henry Cooke and Debra Schill as "Defendants." They are also counter-claimants, cross-claimants, and cross-defendants. The Court will refer to Minnesota Life Insurance Company as "Plaintiff." Minnesota Life is also a counter-defendant.

[2] The Court accepts as true the facts alleged in the Complaint, ECF No. 1, for purposes of this Opinion. The Court also considers matters of public record and documents incorporated into the Complaint. *Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Schill, Jr. (the "Decedent") with the face amount of $500,000 less a policy loan of $1,525.18. Compl. ¶ 6, ECF No. 1. Michael Schill, Jr. died on August 8, 2020. Compl. ¶ 11. The parties agree that when the Decedent obtained the Policy, he named Defendant Debra Schill, the Decedent's widow, ("Mrs. Schill") as the sole beneficiary. Compl. ¶ 6; Countercl. ¶ 11, ECF No. 11. On January 27, 2004, the Decedent sent Minnesota Life an Ownership Change Request form, requesting to change the owner of the Policy to Defendant Henry John Cooke ("Cooke"). On March 8, 2004, the Ownership Change Request form was resubmitted to include Decedent and Cooke's signatures, and Minnesota Life subsequently processed the change in ownership. Compl. ¶ 9, Ex. E. On January 27, 2004, the Decedent also submitted to Minnesota Life a Beneficiary/Name Request form requesting to designate Cooke as the primary beneficiary under the Policy. Plaintiff Minnesota Life claims that it also subsequently processed this change. *Id.* at ¶ 8. Defendant Mrs. Schill claims that Minnesota Life never processed the change of beneficiary in its computer system and that according to Minnesota Life's computer system, Mrs. Schill has always been the beneficiary. Countercl. ¶ 13. On November 25, 2009, Cooke submitted another Ownership Change Request form, requesting ownership be changed once again to Michael Schill, the decedent. *Id.* Compl. at ¶ 10, Ex. G; Answer, Countercl. ¶ 14, Ex. D.

Defendant Mrs. Schill states that an agent for Minnesota Life, Thomas Barkalow, "would review the computer system of Minnesota Life Insurance Company, and confirm to Michael Schill, and often to both Michael and Debra Schill, that Debra Schill was the named beneficiary under the life insurance policy . . . ." Countercl. ¶ 24. In 2019, when the Decedent extended the policy, agents for Minnesota Life affirmed that Debra Schill was shown as the beneficiary. *Id.* at ¶ 27. Because their business relationship devolved in the years before his Decedent's death, Mrs. Schill contends that "it would . . . make no sense . . . that Michael Schill would allow Henry Cooke to be the named beneficiary from 2010 through the date of his death." *Id.* at ¶¶ 34, 40. After Michael Schill died, Mrs. Schill contacted Minnesota Life and Barkolow confirmed the Mrs. Schill was the named beneficiary in August 2020. *Id.* at ¶ 43. Plaintiff includes as an exhibit a document entitled "Minnesota Life Policy Record Card." Countercl. Ex. E. That document, dated August 7, 2020, indicates that the policy owner and insured is Michael Schill Jr. *Id.* Under the subheading "Beneficiary," "Debra Schill, spouse" is listed. *Id.* At the end of the document is the following disclaimer, in all capital letters and bold text: "For financial professional use only. Not for use with the public. Do not print for client." *Id.* On August 10, 2020, Debra Schill demanded that Minnesota Life pay her the policy proceeds. Countercl. ¶ 49. Minnesota Life claims that Mrs. Schill submitted a claim for the death benefits under the Policy on August 18, 2020. Compl. ¶ 12, Ex. I. On September 25, 2020, Defendant Cooke also submitted a claim for death benefits under the Policy. *Id.* ¶ 13, Ex. J. In light of the

competing claims of entitlement, Minnesota Life refused to pay either claimant and instead, on October 13, 2020, filed this interpleader action.

Plaintiff Minnesota Life brings one count for interpleader and contends that it is an innocent stakeholder that is unable to determine whether Mrs. Schill or Mr. Cooke is entitled to the death benefits under the Policy. Compl. ¶ 22. Minnesota Life argues that by depositing the death benefits into the Registry of the Court, it has fulfilled its obligations under the Policy. *Id.* at ¶¶ 23-26. Defendant Debra Schill brings three counts against Minnesota Life as counterclaims: (1) breach of contract, (2) reformation; and (3) negligent misrepresentation. Countercl. ¶¶ 1-212. Mrs. Schill voluntarily dismissed Counts IV, V, and VI. *See* ECF No. 29.

## II. STANDARD OF REVIEW

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Prince*, 501 F.3d 271, 275 (3d Cir. 2007) (quoting *NYLife Distrib., Inc. v. Adherence Grp.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995)). Interpleader allows the party holding the property at issue, or the stakeholder, to file suit, deposit the property with the court, withdraw from the proceeding, and allow the parties with the competing claims to litigate the underlying dispute. *Id.* An interpleader action usually proceeds in two stages. At the first stage, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). The court determines the respective rights of the claimants to the interpleaded funds at the second stage. *Id.* Ultimately, interpleader "relieves the stakeholder from determining at his peril the merits of the competing claims and shields him from the prospect of multiple liability; [and] gives the claimant who ultimately prevails ready access to the disputed fund." *NYLife Distrib., Inc.*, 72 F.3d at 374.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "But [courts] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James*, 700 F.3d at 679 (citations omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

The issue in this case is whether Defendant Mrs. Schill's three claims for breach of contract, contract reformation, and negligent misrepresentation are facially plausible considering Mrs. Schill's allegations that the Court accepts as true, and the central evidence preferred, the Minnesota Life Policy Record Card. First, the Court resolves the parties' choice of law dispute. Then, the Court looks to the elements of Mrs. Schill's three remaining claims.

### A. <u>Choice of Law Analysis</u>

Plaintiff argues that Defendant Schill's claims should be dismissed because her factual allegations fail to set forth the requisite elements under New Jersey law. Pl.'s Mot. to Dismiss, ECF No. 16, at 11, 16, 21. Defendant Schill appears to argue that Florida law applies to this matter, at least regarding Count I for breach of contract, but that, "[t]he law in New Jersey is the same [as Florida law]" and that "[e]ach element of a claim for breach of contract, as established under both Florida and New Jersey law, are pled." Def.'s Resp., ECF No. 27, at 11-12, 14.. With regard to Count II for contract reformation, Plaintiff states that both Florida and New Jersey law provide that intended third-party beneficiary of a contract may sue to enforce that contract. *Id.* at 17-19. As to the remaining count, negligent misrepresentation, Schill does not raise Florida law and only cites New Jersey law. *Id.* at 21-23. Nevertheless, Plaintiff requests both that the Court "defer its [choice of law] decision until [a fuller] factual record is available" and that the Court "consider Florida law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard." *Id.* at 27, 28. Minnesota Life contends that there is a conflict between New Jersey and Florida law, that New Jersey's choice of law analysis applies, and that New Jersey's choice of law analysis requires the Court to apply New Jersey law. Pl.'s Reply, 1-4.

The parties argue extensively about whether New Jersey or Florida law should govern this matter, but on reply, Minnesota Life argues that only one conflict between Florida and New Jersey law exists—as to whether Florida's fee shifting statute applies. Under Florida law, attorney's fees are recoverable under Fla. Stat. §§ 627.401(2), 627.428 if an insured or named beneficiary under a policy prevails against an insurer. No such relief is available under New Jersey law for beneficiaries of life insurance policies. Minnesota Life urges the Court to resolve this conflict of laws dispute now because no additional discovery is necessary to resolve the question. But because the only divergence between Florida and New Jersey law that is relevant to this case pertains to relief conditioned upon Mrs. Schill's future success, and because the Court can resolve the Minnesota Life's motion to dismiss without engaging in a choice of law analysis, the Court declines the invitation at this juncture. The Court's reliance on New Jersey law throughout this opinion is based on Minnesota Life's and Mrs. Schill's near complete reliance on New

Jersey case law in their briefing before this Court, and not a determination that New Jersey law should govern the open dispute regarding attorneys' fees—the parties report, after all, that New Jersey and Florida law are otherwise identical. The parties may renew their arguments at a later appropriate date.

### B. Breach of Contract Claim

To establish a breach of contract claim, a plaintiff must plead: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). Mrs. Schill contends that as a third-party beneficiary to the Policy, she may bring a breach of contract claim against Minnesota Life for its failure to pay her benefits due under the Policy. Def.'s Resp., 11. Minnesota Life replies that to pursue a contract claim as a beneficiary, Mrs. Schill must be an *intended* beneficiary and not merely an *incidental* beneficiary. Pl.'s Reply, 5-6. A third-party may only enforce a contract if it is an intended beneficiary. *See* N.J.S.A. 2A:15-2 ("A person for whose benefit a contract is made . . . may sue thereon in any court . . . "); *Washington v. Corr. Med. Servs.*, 2006 WL 1210522, at *5 (D.N.J. Apr. 28, 2006) (citing *Rieder Communities, Inc. v. Twp. Of N. Brunswick*, 546 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1988)). To qualify as a third-party intended beneficiary, a plaintiff must show that the "contracting parties have expressly intended for that third-party to receive a benefit which might be enforced in the courts." *Washington*, 2006 WL 1210522, at *5 (citing *Airmaster Sales Co. v. N. Bridge-Park Co-op, Inc.*, 748 F. Supp. 1110, 1117-18 (D.N.J. 1990)).

Minnesota Life contends that, under *Doe v. Pennsylvania Board of Probation and Parole*, 513 F.3d 95 (3d. Cir. 2008), the intentions of the contracting parties to make Mrs. Schill a beneficiary must be "discern[ed] from the document itself"—here the language of the Policy, which sets forth the procedure for changing owner and beneficiary of the Policy. But this test, which requires intentions be derived only from the contract language, is derived from Pennsylvania and federal law to interpret an interstate compact, not New Jersey law. Under New Jersey law, courts take into account not only the language of the contract but also the intent of the parties to the contract. "It is a fundamental premise of contract law that a third-party is deemed to be a beneficiary of a contract only if the *contracting parties* so intended when they entered into their agreement." *Ross v. Lowitz*, 120 A.3d 178, 190-91 (N.J. 2015) (taking into consideration Plaintiff's status as merely neighbors of the insured) (emphasis added). Indeed, as Minnesota Life states, "The Court must examine the terms of the contract *and the surrounding circumstances* to determine whether the contracting parties intended the individual to be a third-party beneficiary." *Prinzivalli v. Aruba Phoenix Beach Resort*, 2008 WL 802331, at *2 (D.N.J. Mar. 20, 2008) (emphasis added).

The Policy sets forth the procedure for changing the primary beneficiary. Under the heading "Beneficiary" and subheading "Can you change the beneficiary?," the Policy

5

states: "If you have reserved the right to change the beneficiary, you can request in writing to change the beneficiary. If you have not reserved the right to change the beneficiary, the written consent of the irrevocable beneficiary will be required." ECF No. 11-2, 13. It continues:

> Your written request will not be effective until we record it in our home office. After we record it, the change will take effect as the date you signed the request. However, if the insured dies before the request has been so recorded, the request will not be effective as to those death proceeds we have paid before we recorded your request.

*Id.*[3] As part of its Complaint, Minnesota Life submitted as an exhibit a beneficiary change request form it claims it received on March 8, 2004, listing "Henry Cooke, Partner" as a new beneficiary. *See* ECF No. 1-6. Minnesota Life also submitted as an exhibit a document entitled "Acknowledgement of Beneficiary Change," dated March 11, 2004, listing Michael Schill Jr. as the insured and "Henry Cooke, Partner" as the beneficiary. *See* ECF No. 1-7. The document states, in part, in conspicuous language: "The following beneficiary has been recorded. This revokes all prior beneficiary designations. . . . This acknowledgment, by the Company at its Home Office, is in lieu of endorsement." *Id.*

The question before the Court is whether Mrs. Schill had plead factual content that allows the court to draw the reasonable inference that she was an intended third-party beneficiary, taking into account the terms of the contract and the surrounding circumstances. The Court concludes that she has not. Mrs. Schill raises the "Minnesota Life Policy Record Card," which lists Debra Schill as the beneficiary and states "Not for use with the public. Do not print for client." Countercl. Ex. E. While this document is somewhat perplexing to the Court and perhaps also perplexing to Minnesota Life, Mrs. Schill fails to establish why or how it vitiates the March 11, 2004 acknowledgment of beneficiary change. The Policy sets forth an exclusive process for beneficiary change, and Minnesota Life submitted documentation establishing that that process was followed. Mrs. Schill maintains that Minnesota Life "never processed the change of beneficiary in its computer system," Countercl. ¶ 13, but fails to explain in light of the Acknowledgment of Beneficiary Change, why Minnesota Life's computer system is relevant to whether the beneficiary was changed pursuant to the contract language. Similarly, at least regarding her breach of contract claim, Mrs. Schill fails to explain why Thomas Barkolow's conferral with Michael and Mrs. Schill during which he refer to the computer system, would alter the recording of Cooke as the beneficiary by Minnesota Life at its home office per the language of the Policy. "The beneficiary of a life insurance policy cannot be changed unless there is substantial compliance with the method provided in the contract." *The Prudential Ins. Co. of Am. v. Richmond*, 2007 WL 1959252, at *3 (D.N.J. July 2, 2007) (citing *Strohsahl v. Equitable Life Assurance Soc'y of the United States*, 176 A.2d 814, 816 (N.J. Super. Ct. Ch. Div. 1962)).

---

[3] While Minnesota Life appears to rely on a summary of the Policy, it refers to the document as "the Policy," and Defendant Schill does not object.

Mrs. Schill posits surrounding circumstances that evidence Michael Schill's intention to make Mrs. Schill the primary beneficiary of the life insurance policy, namely Mr. Cooke's vacating of the shared office space in 2009, Mr. Cooke's subsequent fighting with Michael Schill, and related lawsuits. Countercl. ¶¶ 32-34, 39. Mrs. Schill states that "there exists no conceivable scenario where Mr. Schill would have wanted Mr. Cooke to be the beneficiary under the life insurance policy at issue." *Id.* at ¶ 40. It is not the role of the Court, however, to divine the intentions of Michael Schill with regard to his life insurance policy, but to determine the parties' intentions, taking into the account the language of the agreement and the surrounding circumstances "when they entered into their agreement." *Ross v. Lowitz*, 120 A.3d 178, 190-91 (N.J. 2015). Perhaps it was the case that the Decedent meant to record Debra Schill as the primary beneficiary. But the Court cannot substitute Debra Schill as the primary beneficiary when an alteration in beneficiary was made in 2004 pursuant to the language of the Policy and is supported by clear, unambiguous documentation. For this reason, the Court will **GRANT** Minnesota Life's motion with regard to Count I. Count I of Debra Schill's Counterclaims is **DISMISSED WITH PREJUDICE**.

### C. Contract Reformation

"To effectuate the contracting parties' intent, a court may 'reform the terms of a written instrument on a claim of mutual mistake . . .'" *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015) (quoting *Cent. State Bank v. Hudik-Ross Co., Inc.*, 396 A.2d 347, 350 (N.J. Super. Ct. App. Div. 1978)). "Generally, the equitable remedy of reformation is available 'when there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct by the other party." *Oravsky v. Encompass Ins. Co.*, 804 F.Supp 2d 228, 236 (D.N.J. 2011) (quoting *Heake v. At. Cas. Ins. Co.*, 105 A.2d 526 (N.J. 1954)). Mrs. Schill contends that there was a mutual mistake or, alternatively, that Minnesota Life entered into a contractual relationship by means of fraud or unconscionable conduct.

"For a court to grant reformation, there must be clear and convincing proof that the contract reformed is what the contracting parties understood and meant it to be." *Pierides v. GEICO Ins. Co.*, 2010 WL 1526377, at *4 (N.J. Super. Ct. App. Div. Apr. 19, 2010). For the Court to reform the parties' contract such that Mrs. Schill is the designated beneficiary, she would have to show that, pursuant to the terms of the policy, a written request to designate her as the beneficiary was filed. In the face of the March 8, 2004 beneficiary change request and the March 11, 2004 acknowledgment of beneficiary change, Plaintiff cites only the Policy Record Card listing her as the beneficiary. But, as previously stated, the Policy Record Card is not evidence probative of what the contracting parties intended. While the Policy Record Card may evidence a mistake on the part of Minnesota Life, that mistake is wholly separate from the kind of "clear and convincing proof" of the parties' understanding necessary to reform the contract. Furthermore, neither the Policy Record Card, nor the representations of Mr. Barkalow, support a claim that Minnesota Life entered into the contractual relationship by means of fraud. As Minnesota

Life summarizes, "Mrs. Schill does not allege that the Decedent submitted a written request to designate her as the beneficiary as is required under the Policy and that Minnesota Life failed to comply with such a request. Anything less than that precludes the Court from reforming the Policy." Pl.'s Reply, 10-11. The Court will **GRANT** Minnesota Life's motion with regard to Count II. Count II of Debra Schill's Counterclaims is **DISMISSED WITH PREJUDICE**.

### D. Negligent Misrepresentation

"When negligence involves misrepresentation, '[a]n incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance.'" *Shtutman v. Carr*, 2017 WL 4402045, *10 (N.J. Super. Ct. App. Div. Oct. 4, 2017) (internal citation omitted). The elements of negligence are (1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. *Id.* (quoting *Polzo v. County. Of Essex*, 960 A.2d 375, 384 (N.J. 2008) (cleaned up)). To allege a successful claim for negligent misrepresentation, a plaintiff must assert factual allegations pleading three elements: "[1] the defendant negligently made an incorrect statement of a past or existing fact, [2] that the plaintiff justifiably relied on it and [3] that his reliance caused a loss or injury." *Schechter v. Hyundai Motor America*, No. 18-13634 (FLW), 2020 WL 1528038, at *15 (D.N.J. Mar. 31, 2020) (quoting *Masone v. Levine*, 382 N.J. Super. 181, 187, 887 A.2d 1191 (App. Div. 2005)). The Third Circuit has stated that a variety of factors should be considered in determining whether a plaintiffs' reliance was reasonable, including: "(1) the existence of a fiduciary relationship; (2) plaintiffs' opportunity to detect the fraud; (3) the sophistication of the plaintiffs; (4) the existence of longstanding business or personal relationships; and, (5) access to the relevant information." *Kline v. First Western Gov't Secs., Inc.*, 24 F.3d 480, 488 (3d Cir. 1994).

Mrs. Schill alleges that Thomas Barkalow acted as an agent for Minnesota Life; that as an agent for Minnesota Life, Barkalow owed a fiduciary duty to the Schills; that Minnesota Life knew that the Schills would rely on the information communicated by Barkalow to the Schills about their policy; and that had the Schills known Mrs. Schill was not the designated beneficiary on the Policy, the Decedent would have filed to change the beneficiary to Mrs. Schill pursuant to the Policy's terms. Def.'s Countercl. ¶¶ 133-212. Accepting Mrs. Shill's allegations as true, the Court finds that Mrs. Schill's negligent misrepresentation claim is plausible.

Minnesota Life argues that because Mrs. Schill was not an intended beneficiary of the Policy, Minnesota Life did not owe her a duty to advise her of the identity of the Policy beneficiary. Minnesota Life contends that "Mrs. Schill cannot base a claim for negligent misrepresentation against Minnesota Life on its purported omission to disclose the beneficiary under the Policy without demonstrating the Minnesota Life owed her a duty to disclose this information independent of the Policy, which she fails to do." Pl.'s Reply, 12 n. 6. But considering the alleged "longstanding business or personal relationships" between the Schills and Mr. Barkalow, and the existence of an alleged fiduciary

relationship, Mrs. Schill has sufficiently alleged that Minnesota Life had an independent duty not to communicate inaccurate information about the Policy's designated beneficiary, even if Minnesota Life owed no affirmative duty to disclose the Policy's designated beneficiary to Mrs. Schill. Minnesota Life contends that Debra Schill was not the designated beneficiary under the Policy. Mrs. Schill alleges, however, that Barkalow repeatedly represented to her and the Decedent that Debra Schill was the named beneficiary under the Policy. This is sufficient. Minnesota Life's motion to dismiss with regard to Count III is **DENIED**.

Mrs. Schill's negligent misrepresentation claim is independent from the dispute regarding the proper claimant under the Policy. Interpleader "relieves the stakeholder from determining at his peril the merits of the competing claims and shields him from the prospect of multiple liability; [and] gives the claimant who ultimately prevails ready access to the disputed fund." *NYLife Distrib., Inc.*, 72 F.3d at 374. The survival of Mrs. Schill's negligent misrepresentation claim does not preclude interpleaded because there is no possibility that Minnesota Life may be liable on the Policy to both claimants. "Where there are multiple claims to the stake as well as counterclaims against the stakeholder, interpleader is proper, and the court may discharge the plaintiff from liability on the stake but retain jurisdiction over the plaintiff for purposes of adjudicating the counterclaims." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). Consequently, interpleader relief is granted and Minnesota Life must deposit the funds at issue into the Federal Registry. However, the Court retains jurisdiction over Minnesota Life for purposes of adjudicating Mrs. Schill's remaining counterclaim.

### IV. CONCLUSION

For the reasons stated above, Minnesota Life's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts I and II of Defendant Debra Schill's counterclaims are **DISMISSED WITH PREJUDICE**.


Dated: May 26, 2021

                                            */s/ William J. Martini*
                                           **WILLIAM J. MARTINI, U.S.D.J.**