## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MINNESOTA LIFE INSURANCE COMPANY, | |
| Plaintiff/Counter-Defendant, | Civ. No. 2:20-cv-14326 (WJM) |
| v. | |
| HENRY JOHN COOKE, | OPINION |
| Defendant/Counter-Claimant, | |
| and | |
| DEBRA SCHILL, | |
| Defendant/Counter-Claimant/ Third-Party Plaintiff | |
| v. | |
| METRO J. DUDA, JR, an individual, FINANCIAL FOCUS, LLC, THOMAS K. BARKALOW, an individual, and MID ATLANTIC RESOURCE GROUP, LLC | |
| Third-Party Defendants. | |

### WILLIAM J. MARTINI, U.S.D.J.:

In this interpleader[1] action, Plaintiff Minnesota Life Insurance Company ("MLI") seeks a determination of whether Henry Cooke ("Cooke") or Debra Schill ("Schill") is the rightful primary beneficiary under the life insurance policy insuring the life of Schill's late

---

[1] Interpleader is an equitable remedy allowing the party holding the property at issue, or the stakeholder, to file suit, deposit the property with the court, withdraw from the proceeding, and allow the parties with the competing claims to litigate the underlying dispute. *Metro. Life Ins. Co. v. Prince*, 501 F.3d 271, 275 (3d Cir. 2007).

husband, Michael Schill, Jr. ("Decedent"). Third-Party Defendant Financial Focus, LLC ("FF") and Third-Party Defendant Metro J. Duda, Jr. ("Duda") each move to dismiss Schill's "Supplemental Complaint" pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that it is procedurally defective under Fed. R. Civ. P. 14, deficient as a matter of law, and barred by the statute of limitations and the economic loss doctrine. ECF Nos. 76, 83. The Court decides both motions without oral argument.  Fed. R. Civ. P. 78(b). For the reasons set forth below, Third-Party Defendant FF's and Third-Party Defendant Duda's motions to dismiss are **denied in part and granted in part**. Counts I and III are **dismissed**.

## I.    BACKGROUND[2]

On November 22, 2003, MLI issued a life insurance policy to Decedent with the face amount of $500,000 (the "Policy").  Compl. ¶ 6, ECF No. 1. Decedent Michael Schill, Jr. died on August 8, 2020.  Compl. ¶ 11.  On August 10, 2020, Schill demanded that MLI pay her the policy proceeds.  Countercl. ¶ 49, ECF No. 11.  On September 25, 2020, Decedent's chiropractic business partner, Defendant Cooke also submitted a claim for death benefits under the Policy.  Compl. ¶ 13, Ex. J.

Schill was the sole beneficiary when Decedent obtained the Policy, but on January 27, 2004, Decedent submitted to MLI a Beneficiary/Name Request form requesting that Cooke be designated as the primary beneficiary under the Policy, which MLI claims that it processed. Compl. ¶ 8. Decedent also requested that MLI change the owner of the Policy to Cooke; that request was processed after Decedent and Cook's signatures were resubmitted on March 8, 2004. *Id.* at ¶ 9, Ex. E. On November 25, 2009, Cooke submitted another request that ownership be changed back to the Decedent. *Id.* at ¶ 10, Ex. G. According to Schill, each year thereafter, Decedent conferred with MLI agent, Thomas Barkalow ("Barkalow"), who would confirm that "Debra Schill was the named beneficiary under the life insurance policy at issue in this case." Countercl. ¶¶ 23-24.

After her husband died, when Schill contacted Barkalow, he confirmed that she was the named beneficiary in August 2020. *Id.* at ¶ 43. Schill contends that MLI never processed the change of beneficiary in its computer system and that according to MLI's computer system, Schill has always been the beneficiary. *Id.* at ¶ 13.

In light of the competing claims of entitlement, MLI refused to pay either Schill or Cooke and on October 13, 2020, filed this interpleader action. ECF No. 1. On November 9, 2020, Schill filed her Answer and also asserted counterclaims against MLI for breach of

---

[2] A more detailed recitation of the facts is set forth in the Court's May 26, 2021 Opinion, ECF No. 60, and for purposes of deciding the present motions, need not be restated here.

contract for failure to pay her benefits due under the Policy (Count I), reformation of the Policy to designate her as the beneficiary (Count II), and negligent misrepresentation by MLI through its agent, Barkalow (Count III). Countercl. ¶¶ 1-212. On January 26, 2021, the Court consolidated No. CV 20-18537 ("Consolidated Action") into the present interpleader action. ECF No. 31. The Consolidated Action, which had been removed to federal court, was initially a Florida state court suit filed by Schill against MLI seeking solely to obtain benefits under the Policy. Subsequently, MLI moved to dismiss and this Court, upon finding that Schill was not the primary beneficiary under the Policy,[3] granted dismissal of Count I (breach of contract) and Count II (contract reformation) of Schill's Counterclaims but denied dismissal of Counterclaim Count III (negligent misrepresentation). May 26, 2021 Op. and Order, ECF Nos. 59, 60.

On March 25, 2021, Defendant Schill filed a three-count "Supplemental Complaint" against FF, Duda, Barkalow, and Mid Atlantic Resource Group, LLC ("MARG") for breach of contract (Count I), negligence (Count II), and breach of fiduciary duty (Count III). Suppl. Compl., ECF No. 37. In it, she alleges that on September 12, 2003, Decedent paid FF and Duda a commission to procure an insurance policy naming Schill as the original beneficiary. *Id.* at ¶ 18. Schill purports that Duda was "with FF" and were "the agents who processed the application to" MLI for the Policy. *Id.* at ¶ 20. Barkalow and MARG "submitted an application for life insurance with MLI," *id.* at ¶ 19, and "sometime in 2010," became the "primary agents," *id.* at ¶ 45. According to Schill, from about 2003 until Decedent's death in August 2020, FF, Duda, Barkalow and MARG "handled the policy at issue," *id.* at ¶ 44, and "breached the contract by, among other things not making sure that from November 2009, to [Decedent's death] that the named beneficiary under the policy was Schill, and making sure that the policy proceeds were to be paid to Schill," *id.* ¶ 60. Schill contends as brokers, they "should have been aware of the MLI[] requirements for effectuating a change of beneficiary," but failed to properly make the required changes. *Id.* at ¶ 52.

Third-Party Defendants FF and Duda seek to dismiss the Supplemental Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the

---

[3] The Court's decision that Schill is not the primary beneficiary under the Policy effectively resolves the sole claim in the Consolidated Action.

plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "But [courts] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James*, 700 F.3d at 679 (citations omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   DISCUSSION

Third-Party Defendants FF and Duda argue that Schill's Supplemental Complaint is a third-party complaint that is procedurally defective under Fed. R. Civ. P. Rule 14(a), also known as the impleader rule. Schill disagrees, contending that Rules 15 and 20 apply to her Supplemental Complaint rather than Rule 14. Both sides also urge the Court to exercise its discretion under Rule 14 to rule in their favor. Additionally, FF and Duda maintain that Schill's breach of contract, negligence, and breach of fiduciary duty claims are insufficient as a matter of law on numerous grounds and are also barred by the statute of limitations. Each of these contentions will be addressed in turn.

### A.   <u>Joinder of FF and Duda</u>

As a threshold matter, the Court first examines whether Schill's addition of new claims and parties constitutes third-party practice under Rule 14 or is the amendment of an initial pleading under Rule 15. Schill argues that Rule 15[4] (Amended and Supplemental Pleadings) applies to her Third-Party Complaint because she is the plaintiff in the Consolidated Action and that Rule 20[5] (Permissive Joinder of Parties) governs the causes

---

[4] Rule 15(a)(2) states that beyond 21 days after the pleading is served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." To the extent that Schill "Supplemental" Complaint is pursuant to Rule 15(d), that provision is inapplicable as it allows "Supplemental Pleadings" that set out "any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." (emphasis added).

[5] Rule 20(a)(2) provides that persons may be joined as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

of action against FF and Duda as they arise out of "the same transaction, occurrence, or series of transactions or occurrences" as the claims asserted by MLI.

The Court finds that Schill's Supplemental Complaint is a third-party pleading subject to Rule 14. Notably, the face of the Supplemental Complaint plainly states that it "supplement[s] those causes of action asserted in Defendant/Cross-Plaintiff Debra S F Schill's *Answer,* Affirmative Defenses, and Crossclaim against Defendant Henry John Cooke." Suppl. Compl., n.1 (emphasis added). As stated, the Supplemental Complaint does not amend Schill's Consolidated Action Complaint as a plaintiff, but amends her Answer as a defendant. Consistent with this conclusion, MLI is not one of the named defendants in the Supplemental Complaint as it is in the Consolidated Action. *See* Suppl. Compl. ¶ 13. Moreover, the Supplemental Complaint preamble refers to the new parties as "Third Parties." Thus, by Schill's own words, the Supplemental Complaint is in form and substance a third-party complaint, and is accordingly subject to third party practice rules rather than Rule 15 amended pleading rules. Rule 20 is also inapplicable to the joinder of third-party defendants. *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC,* 2013 WL 12156419, at *2 (D.N.J. Aug. 14, 2013) ("Rule 20 does not address the joinder of third-party defendants. Consequently, it is not the proper mechanism to join a third-party defendant. …To join a third-party defendant a party must adhere to Fed. R. Civ. P. 14, which governs third-party practice.") Hence, Schill's Supplemental Complaint must comport with Fed. R. Civ. P. Rule 14.

## B. Rule 14(a)

### a. Interpleader Action

Fed. R. Civ. P. Rule 14(a)(1) provides:

A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

(emphasis added). Rule 14(a) is to be liberally construed to avoid duplicative litigation and permits third-party claims "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied." *F.D.I.C. v. Bathgate,* 27 F.3d 850, 873 (3d Cir. 1994) (citing C.A. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1446, at 355–58 (1990)).

FF contends, and Duda joins in the argument, that Schill's third-party claims are not permitted under Rule 14(a) because MLI's interpleader action is equitable in nature (seeking only to adjudicate the proper beneficiary of Decedent's death benefits), there is no liability to transfer to FF or to Duda. Third-Party Defendants maintain that the attempt to transfer liability is a "crucial characteristic" of Rule 14(a) that is missing this in matter.

*See Lincoln National Life Ins. Co. v. Barba*, 2010 WL 11570412 (D.N.J. July 8, 2010) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff." (citing Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1446 (3d ed. 2010)).

The Court disagrees. To start, FF and Duda are incorrect that only declaratory relief is at stake in the principal action. Schill's remaining counterclaim against MLI for negligent misrepresentation is for money damages of $500,000 in life insurance proceeds. Moreover, FF and Duda's liability is clearly "dependent on the outcome" of the main interpleader action. *F.D.I.C.*, 27 F.3d at 873. If Schill wins in the interpleader action or on her remaining counterclaim against MLI for negligent misrepresentation, she will have no claim against FF or Duda for damages. Only if Schill loses on both claims will FF and Duda be subject to liability.

Under these facts, and where any third-party liability clearly hinges on the outcome of the interpleader, the Court interprets Rule 14(a) to permit Schill to file a third-party action against FF and Duda. *See e.g., Reliance Standard Life Ins. Co. v. Reyes*, 2012 WL 4473123, at *2-3 (E.D. Pa. Sept. 28, 2012) (concluding that defendant in interpleader action to determine proper beneficiary of insurance proceeds may bring third-party claims under Rule 14 because defendant stands to suffer loss of proceeds and potential liability alleged in third-party complaint depends on disposition of interpleader action); *State College Area School Dist. v. Royal Bank of Canada*, 825 F. Supp.2d 573, 594 (M.D. Pa. 2011) ("the mere positioning of Royal Bank as a defendant to a declaratory judgment action, instead of an action for damages, should not limit its ability to implead appropriate third-party defendants that are potentially liable to it for any loss it may suffer as a result of the underlying action."); *Monarch Life Ins. Co. v. Donahue,* 702 F. Supp. 1195 (E.D. Pa. 1989) (allowing defendant to implead investment broker for negligence in filling out life insurance application when only declaratory relief was sought in initial suit).

Next, Third-Party Defendants FF and Duda argue that the Supplemental Complaint should be dismissed because Schill failed to comply with Rule 14(a). Schill did not, by motion, obtain leave to file her third-party complaint before filing it on March 25, 2021, over four months after her Answer on November 9, 2020. *See* Fed. R. Civ. P. Rule 14(a)(1) ("a "third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Schill insists that her Supplemental Complaint is not untimely because the parties consented to extend the deadline for the filing of amended pleadings until March 31, 2021. However, the Amended Joint Discovery Plan, ECF No. 34, which Schill relies on as evidence of the parties' consent, only sets March 31, 2021 as the deadline to file a *motion* to amend or to add parties and does not give Schill free reign to amend or add parties without requesting the Court's leave. Furthermore, as set forth above, Rule 14, rather than Rule 15, governs Schill's Third-Party Complaint. Rule 14 does not authorize third-party practice simply by consent of the

parties. Nonetheless, as noted below, to avoid duplicative actions, the Court declines to exercise its discretion to dismiss the Third-Party Complaint.

### b. Court's Discretion Under Rule 14

A court has discretion whether to permit an impleader action under Rule 14(a) and when "called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications of the case." *Somportex Ltd v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 439 n.6 (3d Cir. 1971), *cert. denied,* 405 U.S. 1017 (1972). In making this determination, courts have considered: "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff." *Spencer v. Cannon Equipment Co.,* 2009 WL 1883929 at *2 (D.N.J. June 29, 2009) (internal quotes and citations omitted).

In weighing these factors, the Court notes that in the interpleader action, there are allegations of third-party negligence, *see* ECF No. 64, MLI Seventh Affirmative Defense, including negligence by Barkalow as MLI's agent, *see* Countercl. ¶¶ 133-212. Given this overlap of negligence claims in both the interpleader and impleader actions, allowing the impleader to proceed is not likely result in any significant trial delay or complication of issues at trial, and instead would prevent circuitous proceedings. Lastly, neither FF nor Duda has suggested that allowing impleader will result in any prejudice to MLI. Thus, upon weighing these considerations, the Court is compelled to exercise its discretion to permit Schill's Supplemental Complaint under Rule 14(a) and now turns to FF and Duda's remaining grounds on which they seek dismissal.

### C. Breach of Contract (Count I)

FF and Duda challenge whether Schill has adequately pled the elements of a breach of contract claim and whether Schill has standing to sue as a third-party beneficiary of the purported agreement between Decedent and Third-Party Defendants FF and Duda "to secure a life insurance policy so on the death of [Decedent], those proceeds would be paid to Schill." Suppl. Compl. ¶ 58.

The Court does not reach these issues, however, because under New Jersey law, a claim against insurance agents or brokers for failing to obtain the proper insurance is not recognized as a claim for breach of contract but rather for negligence. "Although the relationship of broker to insured may be described as contractual, our cases have recognized that the insured 'does not sue on a contract of insurance.' [citation omitted]. The claim asserted is based on the broker's negligent failure to procure the appropriate coverage." *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.,* 135 N.J. 182, 190 (1994) (citing *Rider v. Lynch,* 42 N.J. 465, 477 (1964)); *see also Highlands Ins. Co. v. Hobbs Group, LLC,* 373 F.3d 347, 352 (3d Cir. 2004) (noting that *Carter Lincoln-Mercury* "emphasizes that although the relationship between an insured and its broker is most often

contractual in nature, claims by an insured against its broker are not based on a privity relationship but are premised on the tort concept of negligence in failing to procure the appropriate coverage."); *accord Luzzi v. HUB Int'l Ne. Ltd.,* 2018 WL 3993450, at *7 (D.N.J. Aug. 21, 2018) (granting defendants summary judgment because "New Jersey does not recognize a breach of contract claim in connection with the procurement of insurance."); *Call v. Czaplicki,* 2010 WL 3724275, at *11 (D.N.J. Sept. 16, 2010) (dismissing breach of contract claim noting that "it is well-settled that New Jersey does not recognize a breach of contract claim for the negligent procurement of life insurance."), *reconsideration denied,* 2011 WL 2532712 (June 23, 2011); *ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.,* 652 F. Supp.2d 552, 560 (D.N.J. 2009) (explaining and applying negligence standard set forth in *Carter Lincoln-Mercury*).[6]

Accordingly, Count I of Schill's Supplemental Complaint for breach of contract is **dismissed with prejudice**.

### D. Negligence (Count II)

FF argues that Count II of the Supplemental Complaint fails to sufficiently allege the elements of a negligence cause of action as a matter of law. "In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.,* 212 N.J. 576, 594, 59 A.3d 561, 571 (2013).

Under New Jersey law, insurance brokers are expected to possess a reasonable "degree of skill and knowledge" and to exercise "good faith and reasonable skill, care and diligence in the execution of the[ir] commission," and to "provide the coverage he

---

[6] Cases allowing breach of contract claims pre-date *Carter Lincoln-Mercury* and have held that strong public policy compelled finding that the public was a third-party beneficiary. *See e.g., Impex Agricultural Comm. Div. Impex Overseas Corp. v. Parness Trucking Corp.,* 576 F. Supp. 587, 591-92 (D.N.J. 1983) (holding that customer of common carrier was within zone of foreseeable injured party and may maintain negligence suit as well as suit for breach of contract against broker given "strong state policy favoring insurance of goods transported by common carrier."); *Werrmann v. Aratusa, Ltd.,* 266 N.J. Super. 471, 477–78 (App. Div. 1993) ("Because of the importance of liability insurance, whether it be mandatory or optional, members of the general public are third-party beneficiaries of an agreement between a business proprietor and its insurance broker to procure coverage."); *Eschle v. Eastern Freight Ways,* 128 N.J. Super. 299, 302 (Law Div. 1974) (permitting injured member of public to maintain breach of contract and negligence claims against agent or broker for failure to procure requested insurance finding that public is third-party beneficiary due to public policy to see that drivers are properly insured).

undertook to supply." *Rider*, 42 N.J. at 476. If he fails to do so, "he becomes liable to his principal for the loss sustained thereby." *Id.*; *Carter Lincoln-Mercury*, 135 N.J. at 189 ("[A]gents and brokers, when acting on behalf of an insured, owe the insured a duty of due care."). "Lapses in that duty that can give rise to liability include, but are not limited to, either (1) failing completely to arrange for an insurance policy or (2) delivering a policy that is void, materially deficient or otherwise does not provide the coverage the broker agreed to procure." *Highlands,* 373 F.3d at 352.

Here, FF contends that it owed no duty to the Schills because no facts support that Duda was an employee of FF, that Duda managed the Policy on FF's behalf, or that FF was the broker of record. Accepting all allegations in the Supplemental Complaint as true and giving Schill the benefit of every favorable inference as the Court must on a motion to dismiss, the Court concludes that it is plausible that FF and Duda acted as Decedent's insurance brokers based on her contention that Duda, "through FF were the agents who processed the application" for MLI to issue the Policy. Suppl. Compl. ¶ 20.

Even if FF was Decedent's insurance agent, FF posits that it owed no duty of care to Schill. Under New Jersey law, however, the duty of care owed by an insurance broker or agent's duty of care is not limited to his or her clients. As explained by the New Jersey Supreme Court, "an insurance broker may owe a duty of care not only to the insured who pays the premium and with whom the broker contracts but to other parties found within the zone of harm emanating from the broker's actions as well." *Carter Lincoln–Mercury,* 135 N.J. at 201(holding that insurance broker and agent owed a duty of care to loss-payee found within zone of harm emanating from broker's negligent actions). "[T]hat a plaintiff may be found within the 'range of harm' emanating from a tortfeasor's activities is more significant than whether the parties stand in a direct contractual relationship." *Id.* at 195.

The "two key elements that should guide courts in delineating the boundaries of that zone of harm" are foreseeability and fairness. *Highlands*, 373 F.3d at 352; *Carter Lincoln– Mercury,* 135 N.J. at 196 ("duty is defined not by the contractual relationship between the parties but by considerations of foreseeability and fairness"). Foreseeability includes: "the relationship between the plaintiff and the broker, the nature of the risk and the defendant's ability and opportunity to exercise care and avert harm." *Highlands*, 373 F.3d at 352 (citing *Carter Lincoln–Mercury,* 135 N.J. at 194-95)); *see e.g., Rider*, 42 N.J. at 481 (concluding that father of insured could proceed with action in negligence against broker who knew or should have known that insurance did not meet the needs of insured); *Walker v. Atlantic Chrysler Plymouth, Inc.*, 216 N.J. Super. 255, 262 (App. Div. 1987) (holding that employee could maintain negligence claim against employer's automobile insurance broker because it was "clearly foreseeable" that employee would be damaged if broker did not carry out his duty); *Atain Specialty Ins. Co. v. Ne. Mountain Guiding, LLC*, 2020 WL 487110, at *16 (D.N.J. Jan. 30, 2020) (finding that foreseeable injured third-party was appropriate plaintiff

in negligence action against broker for failure to procure appropriate insurance). Once the foreseeability of an injured party is established, the next inquiry is whether "considerations of fairness and policy warrant the imposition of a duty." *Carter Lincoln–Mercury,* 135 N.J. at 194-95; *Highlands,* 373 F.3d at 352; *see e.g., Eschle,* 128 N.J. Super. at 304 ("the potential lack of recompense to a potential injured party is a natural and foreseeable result of an agent's or broker's actions if he negligently fails to obtain proper coverage in accordance with his instructions").

In the present case, Schill was Decedent's wife and purportedly the intended primary beneficiary of life insurance proceeds that FF was tasked with handling including ensuring that the proper beneficiary was listed. As such, Schill is a foreseeable injured party who was in the zone of harm emanating from any negligence in failing to obtain the requested life insurance policy, one that named Schill as the primary beneficiary. Furthermore, fairness dictates imposing a duty of care upon FF and the other brokers to perform their duties with the requisite care. Without the imposition of such a duty, if Cooke is awarded Decedent's life insurance proceeds and accepting as true that Decedent intended Schill to be the primary beneficiary, Schill would have no recourse for the harm caused by broker negligence.

Next, FF argues that causation has not been properly pled because any wrongdoing could not be the "but for" and proximate cause of Schill's damages given that over ten intervening years passed in which any of the other parties could have fixed the alleged error. FF also insists that it could not have caused damage to Schill because Cooke, as the purported owner of the Policy,[7] was the one who needed to approve any change in beneficiary. Such issues of material fact are to be determined by the trier of fact and are not appropriate for resolution on a motion to dismiss.

As for damages, Schill sufficiently pleads that as a proximate result of the breach of duty by the Third-Party Defendants, she has suffered damages in the amount of $500,000. Suppl. Compl. ¶ 71. More accurately, this is the potential amount of actual damages that Schill would incur depending on the outcome of the interpleader.

Finally, FF objects to Schill's Supplemental Complaint as containing conclusory group-pled allegations. Schill has alleged that from 2003 until "sometime in 2010," FF and Duda, as Decedent's insurance agents, processed the application for the Policy with MLI and that they "failed to properly submit the paperwork" regarding Decedent's change of beneficiary. *Id.* at ¶¶ 29-32. The Court finds that Schill's pleading gives FF fair notice of Schill's charges against it.

---

[7] Schill alleges, but Cooke denies, that on November 25, 2009, Cooke submitted another Ownership Change Request form, requesting ownership be changed back to the Decedent. Countercl. ¶ 14, Ex. D; Compl. at ¶ 10, Ex. G.

Accordingly, FF motion to dismiss Count II of Schill's Supplemental Complaint for failure to state a claim of negligence is **denied.**

### E.  Breach of Fiduciary Duty (Count III)

FF and Duda maintain that a breach of fiduciary duty claim is not a standalone cause of action against insurance brokers. In response, Schill contends that she may plead in the alternative.

It is well established that "[i]nsurance brokers stand in a fiduciary capacity with their clients, to whom they owe a duty to exercise reasonable skill and good faith." *Harbor Commuter Serv., Inc. v. Frenkel & Co.,* 401 N.J. Super. 354, 367 (App. Div. 2008) (citing *Aden v. Fortsh,* 169 N.J. 64, 78–79, 776 A.2d 792 (2001)). A broker who agrees but fails to "procure a specific insurance policy for another" may be liable for damages resulting from that negligence. *Aden,* 169 N.J. at 79. However, because "[l]iability resulting from the negligent procurement of insurance is premised on" the client's reliance on the broker's expertise, it is "essentially one of professional malpractice." *Id.* While a plaintiff may plead in the alternative, under New Jersey law, negligence and breach of fiduciary duty claims against an insurance broker are not alternative causes of action, but rather, constitute a single cause of action for negligence. *See e.g., Harbor Commuter Serv., Inc. v. Frenkel & Co.,* 401 N.J. Super. 354, 368 (App. Div. 2008) (noting that in action against insurance broker for breach of fiduciary duties, plaintiff had to prove negligence and proximate cause). A claim for breach of fiduciary duty is subsumed within a claim for broker malpractice and/or negligence. *See Triarsi v. BSC Group Services, LLC*, 422 N.J. Super. 104, 115 (App. Div. 2011) (examining breach of fiduciary duty count and another count alleging broker malpractice and concluding that "as a matter of law, there is actually a single duty and it is essentially one sounding in negligence"); *see also Trusted Transportation Sols., LLC v. Guarantee Ins. Co.,* 2018 WL 2926167, at *4 (D.N.J. June 11, 2018) ("the sole duty of care owed by an insurance broker to an insured is to refrain from engaging in conduct giving rise to a claim for broker malpractice. To the extent an insurance broker owes a 'fiduciary duty' to an insured, such duty arises only in the context of a broker malpractice and/or negligence claim." (citing *Triarsi,* 422 N.J. Super. at 115)). Schill cites no authority that provides otherwise.

Count III of Schill's "Supplemental" Complaint for breach of fiduciary duty is **dismissed with prejudice**.

### F.  Economic Loss Doctrine (Counts II and III)

FF and Duda each argue that Schill's negligence and fiduciary breach claims are barred by New Jersey's economic loss doctrine. "[T]he economic loss doctrine bars negligence claims when the party asserting the action has a contractual remedy, thereby maintaining a boundary between contract and tort law and preventing amplified exposure

to the party responsible for the loss." *Schenker, Inc. v. Expeditors Int'l of Washington, Inc.,* 2016 WL 3563187, at *2 (N.J. Super. Ct. App. Div. July 1, 2016). There are, however, two exceptions under this doctrine. "The first is where the injured party would not otherwise have a remedy." *Id.* (citing *People Express Airlines v. Consol. Rail Corp.,* 100 N.J. 246, 249–50, 254 (1985) (airline could recover for pure economic loss where a tank car in a freight yard ignited and caused evacuation of the nearby airport because the airline had no contract with the owners of the tank car and its only means of recovery was in tort)). "The second exception is if an independent duty exists …irrespective of contractual obligations, such as for doctors, lawyers, insurance brokers, and manufacturers in products-liability law." *Id.* (citing *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 316 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").

Here, the economic doctrine does not apply. As discussed above, Schill has no contractual remedy. Even if it did apply, Schill correctly states that her negligence claim falls under the exceptions to the doctrine: 1) she does not have any other remedy and 2) insurance brokers owe an independent duty of care not only to the insured, but also to the foreseeable injured party in the zone of harm. *See* negligence discussion above. Accordingly, Schill's negligence claim is not barred by the economic loss doctrine.

### G. Statute of Limitations

The Third-Party Defendants posit that Schill's claims are time-barred. The New Jersey statute of limitations is six years for claims of breach of contract, as well as for negligence. *See* N.J.S.A. § 2A:14-1; *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assoc. Inc.,* 859 F. Supp.2d 706, 715 (D.N.J. 2012) (noting six-year limitations for breach of fiduciary duty and professional negligence); *Kretz v. Hernandez,* 2016 WL 6471444, at * 3 (D.N.J. Oct. 31, 2016) (noting breach of contract claims governed by six-year statute of limitations).

Whether Schill's remaining negligence claim[8] is time-barred hinges on when her cause of action accrued. If it accrued only after the discovery of her injury when MLI denied her death benefits in 2020, her claim is not precluded by the statute of limitations. If, on the other hand, FF and Duda are correct that Schill's claim accrued in 2009 when the alleged wrongdoing occurred, then the negligence claim fails as a matter of law.

New Jersey's discovery rule provides that "'in an appropriate case, a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause

---

[8] Because the Court has already determined that under New Jersey law, Count I for breach of contract and Count III for breach of fiduciary duty must be dismissed, the Court does not address whether those counts are also barred by the statute of limitations.

of action." *County of Morris v. Fauver*, 153 N.J. 80, 109 (1998) (citing *O'Keeffe v. Snyder,* 83 N.J. 478, 491 (1980)). But not "every delayed discovery will justify application of the [discovery] rule because weighing against denying an injured person his day in court is the inequity in compelling "a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost." *Id.* (citing *Lopez v. Swyer,* 62 N.J. 267, 274 (1973)). Consequently, "the discovery rule has been applied most frequently in personal injury or negligence-type actions, which by their nature are often self-concealing or undiscoverable." *Id.* at 109.

FF and Duda contend that the statute of limitations should not be tolled because Decedent knew, or with reasonable diligence, should have known that any subsequent beneficiary change did not occur since he did not execute a change of beneficiary form as he had done in 2004, and that he should have sought written confirmation that the beneficiary had been properly changed. However, Schill does in fact claim that each year after 2009, Decedent conferred with Barkalow who would confirm that Schill was the named beneficiary of the Policy. Countercl. ¶¶ 23-24. This is consistent with the information Schill received from Barkalow in August 2020 – that she was the primary beneficiary. There is no evidence to suggest that had the Schills requested written confirmation of the beneficiary, they would have received different information. In any event, any injury to Schill did not accrue until after MLI denied her the death benefits. *Cf. Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc.,* 307 N.J. Super. 48, 55, (App. Div. 1998), *aff'd,* 156 N.J. 580 (1999) ("A professional malpractice claim, ... accrues when: (1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." (internal quotes and cites omitted)).

Accordingly, the Court concludes that Schill's negligence claim is not barred by New Jersey's six-year statute of limitations.

### H. Doctrine of Laches and Equitable Principles

Lastly, FF argues that equitable principles should prevent it from having to defend against stale claims. While the Court is aware that memories may have faded and some evidence may not be available, *see County of Morris,* 153 N.J. at 109, those factors do not weigh in favor of depriving Schill of her day in court given that she did not know nor with reasonable diligence would have known that she was not the primary beneficiary of the death benefits under the Policy until after MLI denied her those benefits.

The doctrine of laches is an equally groundless basis for dismissal. The doctrine of laches "is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the

other party." *Knorr v. Smeal*, 178 N.J. 169, 180-81 (2003). In this case, Schill has not engaged in any inexcusable or unexplained delay in bringing suit against the Third-Party Defendants given that she became aware that she was not the beneficiary only after MLI refused to pay her the death benefits under the Policy.

## IV.    CONCLUSION

For the reasons noted above, FF and Duda's Motions to Dismiss are **denied in part and granted in part**. Impleader is permitted in this action under Fed. R. Civ. P. 14(a) and in the sound discretion of the Court. However, for the reasons discussed above, Supplemental Complaint Count I for breach of contract and Count III for breach of fiduciary duty cannot proceed as a matter of law. Counts I and III are **dismissed with prejudice.** FF and Duda's motions to dismiss Count II for negligence are **denied**.

Dated: November 4, 2021

WILLIAM J. MARTINI, U.S.D.J.